UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

JAMES MICHAEL KYRO,

Petitioner,

v.

CONNIE ROERRICH, Warden,

Respondent.

Civil File No. 00-2148 (JRT/FLN)

**REPORT AND RECOMMENDATION**

James Michael Kyro, Minnesota Correctional Facility, Faribault, Minnesota, 55021, Petitioner, pro se.

Mark Nathan Lystig, Assistant Ramsey County Attorney, 50 Kellogg Boulevard West, Suite 315, St. Paul, MN, 55102, for Respondent.

FRANKLIN L. NOEL, Chief Magistrate Judge

This matter is before the undersigned Magistrate Judge of the District Court on the petition of James Michael Kyro for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Respondent has filed an answer contending that the petition should be dismissed. The matter has been referred to the undersigned for report and recommendation under 28 U.S.C. § 636 and Local Rule 72.1(c). For the reasons discussed below, the Court concludes that Petitioner's habeas corpus petition must be DISMISSED WITH PREJUDICE.

## I. BACKGROUND

On November 17, 1997, a Ramsey County jury found Petitioner guilty of second degree murder. On January 2, 1998, he was sentenced to 150 months in prison. He is presently serving his sentence at the Minnesota Correctional Facility in Faribault,

FILED JUN 06 2001
FRANCIS E. DOSAL, CLERK
JUDGMENT ENTD
DEPUTY CLERK

Minnesota.

The evidence presented at Petitioner's trial showed that he was with his best friend, Andrew Schoen, during the evening of May 24, 1997. The two men had been drinking and got into a fight. Schoen stabbed Petitioner in the thigh with a large knife. As the fight continued, Petitioner stabbed Schoen in the chest and then fled the scene. When the police found Schoen a short time later, he was still alive. He was taken to a hospital, but died soon after he arrived there.

Petitioner also went to the hospital for treatment of the stab wound to his leg. He was interviewed there by the police, and admitted that he had stabbed Schoen in the chest. He was then placed under arrest, and later was charged with second degree unintentional murder. At his trial, Petitioner argued that he had been acting in self-defense when he stabbed Schoen. The jury rejected that defense and found him guilty as charged.

Following his conviction, Petitioner filed a direct appeal with the Minnesota Court of Appeals. His appellate counsel filed a brief that raised a single issue -- "[w]hether the trial court committed reversible error by giving the jury an inaccurate and misleading self-defense instruction." (Respondent's Exhibits, [Docket No. 9], Appendix A -- "Appellant's Brief," p. 3.) Petitioner also filed his own separate "Pro Se Brief," (id., Appendix B), which raised several additional claims. In his Pro Se Brief, Petitioner argued, inter alia, that (1) one of the jurors had a step-daughter who knew, and disliked, Petitioner's uncle, and (2) his trial attorney failed to advise him that he could request a jury instruction and inquiry on the lesser included offense of manslaughter.

The Court of Appeals agreed with Petitioner's contention that the jury had not been properly instructed about self-defense, but concluded that Petitioner "was not substantially and materially prejudiced by the erroneous instruction." State v. Kyro, No. C8-98-573 (Minn.App. 1999), 1999 WL 55504 (unpublished opinion) at *5. (A copy of the Court of Appeals' decision is included in the record here at Respondent's Exhibits, Appendix C.) The Court also summarily rejected the arguments that Petitioner had raised in his Pro Se Brief. Id. Thus, Petitioner's conviction and sentence were affirmed on direct appeal.

Thereafter, Petitioner's attorney filed a "Petition For Review Of Decision Of Court Of Appeals," (Respondent's Exhibits, Appendix D), seeking further review of Petitioner's conviction by the Minnesota Supreme Court. The only issue presented to the Supreme Court was the same issue that had been raised in the brief that Petitioner's appellate counsel had filed in the Court of Appeals – namely "[w]hether the trial court committed reversible error by giving the jury an inaccurate and misleading self-defense instruction." (Id., p. 2.) The Supreme Court denied Petitioner's request for further review in a one-sentence order dated April 20, 1999. (Respondent's Exhibits, Appendix E.)

On February 18, 2000, Petitioner filed a petition for post-conviction relief in the trial court. (Respondent's Exhibits, Appendix F.) In that motion he re-raised two of the arguments that he had presented to the Court of Appeals in his Pro Se Brief – namely (1) that he had received ineffective assistance of counsel at trial, because his attorney failed to advise him "of his option to argue that the jury consider the lesser charge of 'manslaughter,'" and (2) that his "constitutional right to a fair trial by an impartial jury was undermined" by the presence of a "jury member [who] knew Petitioner['s] family,"

(presumably Petitioner's uncle). (Id. pp. 2, 4.) Petitioner's post-conviction motion was summarily denied by the trial court's order of March 2, 2000. (Respondent's Exhibits, Appendix G.) The court held that Petitioner's two post-conviction claims were procedurally barred, because they were available to him and could have been raised, (and were in fact raised), in his direct appeal. (Id.) Petitioner did not appeal the trial court's ruling on his post-conviction motion, and he concedes that it is now too late to do so. (Petition, [Docket No. 1], p. (4), ¶ 11(c)(d).)

On September 15, 2000, Petitioner filed his present application for federal habeas corpus relief. His petition lists four claims for relief:

(1) "The trial court abused it's [sic] discretion by allowing a juror to remain who was acquainted with the petitioner's uncle, who previously exhibited a biased opinion;"

(2) "Inaccurate and biased jury instructions;"

(3) "Ineffective assistance of counsel;" and

(4) "Impartial Hearing Tribunal" -- which Petitioner further explains by adding that "Comments made by the sentencing judge were indicative of predisposition of the petitioner's guilty and were biased."

(Petition, pp. (5)-(6), ¶ 12.)

For the reasons discussed below, the Court finds that none of Petitioner's current claims for relief can properly be entertained in a federal habeas corpus action.[1]

---

[1] The Court rejects Respondent's contention that the instant petition is time-barred under 28 U.S.C. § 2244(d). Respondent acknowledges that the petition is timely if the statute of limitations was tolled, pursuant to § 2244(d)(2), while Petitioner's post-conviction motion was pending in the state courts. But in fact, Respondent contends, the statute of limitations was not tolled during the state post-conviction proceedings, because §

## II. DISCUSSION

### A. Grounds One, Three and Four Have Been Procedurally Defaulted

Three of Petitioner's current claims for relief -- grounds one, three and four -- have not been fairly presented to the highest available state court, and must therefore be summarily denied on the grounds of procedural default.

#### (i) Applicable Legal Principles

It is well established that a federal court will not entertain a petition for a writ of habeas corpus on behalf of a state prisoner unless the prisoner has first exhausted all available state court remedies for all of his claims. 28 U.S.C. § 2254(b); O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999); Rose v. Lundy, 455 U.S. 509 (1982). This exhaustion of state remedies requirement is based on the principles of comity and federalism; its purpose is to ensure that state courts are given the first opportunity to correct alleged federal constitutional errors raised by state prisoners. O'Sullivan, 526 U.S. at 842; Duncan

---

2244(d)(2) tolls the statute only during the pendency of a "properly filed" post-conviction motion, and -- according to Respondent – Petitioner's post-conviction motion was not "properly filed." Respondent claims that the post-conviction motion was not properly filed, because all of the claims presented in the motion were found to be procedurally barred.

However, on November 7, 2000 -- just a few weeks after Respondent's Answer was filed -- the U.S. Supreme Court handed down its decision in Artuz v. Bennett, 121 S.Ct. 361 (2000), which effectively forecloses Respondent's statute of limitations defense. In Artuz, the Court held that an application for post-conviction relief "is 'properly filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings," and that "the question whether an application has been 'properly filed' is quite separate from the question whether the claims contained in the application are meritorious and free of procedural bar." Id. at 364. Respondent does not contend that there was anything wrong with the manner in which Petitioner filed his post-conviction motion. Therefore, based on Artuz, the Court finds that Petitioner's motion was "properly filed" for purposes of § 2244(d)(2), and that Respondent's statute of limitations defense is invalid.

v. Henry, 513 U.S. 364, 365-66 (1995) (per curiam); Rose v. Lundy, 455 U.S. at 518-19; Smittie v. Lockhart, 843 F.2d 295, 298 (8th Cir. 1988).

"Because the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts,... state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan, 526 U.S. at 845 (emphasis added). In other words, a prisoner must fairly present all of his constitutional claims to the highest available state court before seeking relief in federal court. State prisoners who have the right to seek discretionary review in the state's supreme court must exercise that right, and seek such review, in order to satisfy the exhaustion of state remedies requirement. Id. at 847. This rule applies to claims raised in collateral proceedings, (such as a post-conviction motion), as well as to claims raised on direct appeal. White v. Godinez, 192 F.3d 607, 608 (7th Cir. 1999) (per curiam), cert. denied, 120 S.Ct. 1004 (2000).

When a prisoner has not exhausted his state court remedies with respect to some particular claim, and state procedural rules preclude any further attempts to satisfy the exhaustion requirement as to that claim, then the claim has been procedurally defaulted. Coleman v. Thompson, 501 U.S. 722, 750 (1991); McCall v. Benson, 114 F.3d 754, 757 (8th Cir. 1997). See also O'Sullivan, 526 U.S. at 848 (petitioner's failure to present his federal habeas claims to the state supreme court in a timely manner results in a procedural default of those claims). A procedural default can also occur if a state court has expressly declined to address a particular claim on the merits because the claim has not been raised

in accordance with applicable state procedural rules. "Ordinarily, a federal court reviewing a state conviction in a 28 U.S.C. § 2254 proceeding may consider only those claims which the petitioner has presented to the state courts in accordance with state procedural rules." Satter v. Leapley, 977 F.2d 1259, 1261 (8th Cir. 1992). See also McCall, 114 F.3d at 757 ("a federal court may usually only consider 'those claims which the petitioner has presented to the state courts in accordance with state procedural rules'"), quoting Abdullah v. Groose, 75 F.3d 408, 411 (8th Cir.), cert. denied, 517 U.S. 1215 (1996). "A federal claim has not been fairly presented to the state courts," and is therefore procedurally defaulted, "when the state court has declined to decide the federal claim on the merits because the petitioner violated a state procedural rule." Hall v. Delo, 41 F.3d 1248, 1250 (8th Cir. 1994).

A claim that has been procedurally defaulted will not be entertained in a federal habeas corpus proceeding, unless the petitioner has shown "cause and prejudice" to excuse his procedural default, or, in the alternative, that there would be a "fundamental miscarriage of justice" if the federal court declined to consider the claim. Coleman, 501 U.S. at 750.

The "fundamental miscarriage of justice" exception is available only upon a "showing, based on new evidence, that 'a constitutional violation has probably resulted in the conviction of one who is actually innocent.'" Brownlow v. Groose, 66 F.3d 997, 999 (8th Cir. 1995), cert. denied, 516 U.S. 1161 (1996) (emphasis added), quoting Schlup v. Delo, 513 U.S. 298, 327 (1995). In other words, the petitioner cannot simply point to errors that allegedly occurred during the course of his criminal prosecution; he must instead offer

some new evidence which affirmatively demonstrates that he is, in fact, innocent of the crime for which he was convicted.

> "The actual innocence exception is concerned with claims of actual, not legal innocence. Anderson v. United States, 25 F.3d 704, 707 (8th Cir. 1994). It is evidence of factual innocence coupled with a constitutional violation which triggers the actual innocence exception. Indeed, a credible claim of actual innocence 'requires [a] petitioner to support his allegation of constitutional error with new reliable evidence....' [Schlup, 513 U.S. at 324.] Examples of evidence which may establish factual innocence include credible declarations of guilt by another, see Sawyer v. Whitley, 505 U.S. 333, 340... (1992), trustworthy eyewitness accounts, see Schlup, 513 U.S. [at 324]... and exculpatory scientific evidence."

Pitts v. Norris, 85 F.3d 348, 350-51 (8th Cir.), cert. denied, 519 U.S. 972 (1996). For purposes of showing actual innocence, "'evidence is new only if it was not available at trial and could not have been discovered earlier through the exercise of due diligence.'" Johnson v. Norris, 170 F.3d 816, 817 (8th Cir. 1999), quoting Armine v. Bowersox, 128 F.3d 1222, 1230 (8th Cir. 1997) (en banc), cert. denied, 523 U.S. 1123 (1998).

The Supreme Court has summarized the rules governing procedural default as follows:

> "In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violations of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice".

Coleman, 501 U.S. at 750.

**(ii) Petitioner's Procedural Default**

In this case, Petitioner's first, third and fourth grounds for relief have been procedurally defaulted, because they have not been fairly presented to the Minnesota

Supreme Court -- and it is now too late to do so.

Petitioner's fourth ground for relief – i.e., that the trial judge was biased – is clearly barred, because Petitioner has never presented that claim to any state court. He did not raise it either in his direct appeal or in his post-conviction motion, and it is now much too late for him to return to the state courts and attempt to raise that claim in some new state court proceeding. "Minnesota law provides that once the petitioner has directly appealed his sentence 'all matters raised therein, and all claims known but not raised, will not be considered upon a subsequent petition for postconviction relief.'" McCall, 114 F.3d at 757 citing State v. Knaffla, 243 N.W.2d 737, 741 (Minn. 1976); Roby v. State, 531 N.W.2d 482, 484 (Minn. 1995). Therefore, Petitioner's fourth claim for relief has obviously been defaulted.

It is not quite so readily apparent -- though no less certain -- that Petitioner's first and third grounds for relief have also been defaulted. Those two claims – i.e. that Petitioner's trial was tainted by a biased juror, (ground one), and that Petitioner received ineffective assistance from his trial counsel, (ground three) -- were raised in Petitioner's Pro Se Brief to the Minnesota Court of Appeals. However, those claims were not included in the request for further review that Petitioner filed in the Minnesota Supreme Court.

The U.S. Supreme Court has specifically held, in O'Sullivan v. Boerckel, that a claim is not exhausted if it is presented only to a state intermediate appellate court, and not to the state's highest appellate court. In O'Sullivan, an Illinois prisoner raised several claims in his direct appeal to the Appellate Court of Illinois, which is an intermediate level appellate court comparable to the Minnesota Court of Appeals. The prisoner's conviction

and sentence were affirmed by the intermediate appellate court, and the prisoner then filed a petition for further review in the Illinois Supreme Court. In that petition, however, the prisoner raised only three issues. The State Supreme Court denied the prisoner's request for further review, and he then filed a federal habeas corpus petition listing six grounds for relief. The federal district court found that the prisoner "had procedurally defaulted his first, second, and third claims by failing to include them in his petition for leave to appeal to the Illinois Supreme Court." 526 U.S. at 841. The Seventh Circuit reversed the district court, holding that the prisoner "was not required to present his claims in a petition for discretionary review to the Illinois Supreme Court to satisfy the exhaustion requirement." Id. at 842. The U.S. Supreme Court, however, reversed the Court of Appeals, agreeing with the district court's original decision. The Supreme Court held that claims presented only to an intermediate state appellate court, and not subsequently raised in an application for further review in the state's highest appellate court, are procedurally defaulted.

Based on O'Sullivan, this Court concludes that grounds one and three of Petitioner's current petition have been procedurally defaulted, because they were presented only to the Minnesota Court of Appeals, and not to the Minnesota Supreme Court.[2]

---

[2] The Court is satisfied that O'Sullivan is applicable here, even though the present petition might have been treated differently under the case law existing at the time of Petitioner's direct appeal. See Dolny v. Erickson, 32 F.3d 381 (8th Cir. 1994) (petition for discretionary review not required to exhaust state remedies), cert. denied, 513 U.S. 1111 (1995). Although new constitutional principles emanating from U.S. Supreme Court decisions usually are not retroactively applicable on collateral review, (pursuant to Teague v. Lane, 489 U.S. 288 (1989)), our Court of Appeals has held that new Supreme Court interpretations of the procedural rules governing federal habeas review are retroactively applicable. Charron v. Gammon, 69 F.3d 851, 856 (8th Cir. 1995), cert. denied, 518 U.S.

Furthermore, Petitioner's subsequent post-conviction motion did not overcome the procedural default that occurred when he failed to present grounds one and three (of his current petition) to the Minnesota Supreme Court in his direct appeal. The post-conviction motion does not help Petitioner for two reasons. First, the trial court refused to consider Petitioner's post-conviction claims on the merits, because those claims could have been raised, (and were in fact raised), in Petitioner's direct appeal. Petitioner was therefore barred from raising those claims in a post-conviction motion, pursuant to Minnesota's procedural rules governing the types of claims that can properly be raised in post-conviction proceedings. (See Knaffla and Roby, supra.) Secondly, Petitioner never appealed the trial court's ruling on his post-conviction motion, (even though such an appeal is expressly authorized by Minn.Stat. § 590.06), which deprived Minnesota's appellate courts of the opportunity to review the post-conviction proceedings. Because it is now too late to ask the state appellate courts to review the post-conviction claims, Petitioner's failure to appeal constitutes a secondary procedural default.[3]

---

1009 (1996). In Charron, the Court held that the principles set forth in Coleman v. Thompson should be applied to a prisoner's state habeas petition, even though the prisoner was thereby prevented from bringing certain claims that might not have been barred under pre-Coleman case law. See also Hull v. Freeman, 991 F.2d 86, 90 (3d Cir. 1993) (applying Coleman retroactively); Allen v. Hooks, No. CIV. A. 00-0304AHM (S.D.Ala. 2000), 2000 WL 1848473 at *2 (habeas petitioner's claims barred by O'Sullivan, even though they might not have been barred under pre-O'Sullivan case law). Based on Charron, the Court concludes that the principles set forth in O'Sullivan are properly applicable to the case at bar.

[3] The Court recognizes that an appeal in the post-conviction proceedings probably would have been futile, because the appellate courts undoubtedly would have affirmed the trial court's disposition of Petitioner's post-conviction motion. The fact remains, however, that Petitioner did not fairly present his post-conviction claims to the state's highest court, and his failure to do so constitutes a separate procedural default as to those claims.

**(iii) Cause and Prejudice/Actual Innocence**

The only remaining issue to consider is whether Petitioner has shown cause and prejudice, or actual innocence, to excuse his procedural default with respect to grounds one, three and four of his petition. Petitioner has made no attempt to satisfy either the cause and prejudice standard, or the actual innocense standard, and the Court's own independent review of the record has disclosed no proper basis to excuse his procedural default.

In order to satisfy the "cause" requirement, a prisoner must show that some external impediment prevented him from presenting his claims to the state's highest court in a procedurally proper manner. Coleman, 501 U.S. at 753 ("'cause' under the cause and prejudice test is something external to the petitioner, something that cannot fairly be attributed to him... [f]or example, 'a showing that the factual or legal basis for a claim was not reasonably available... or that some interference by officials made compliance impracticable'"), (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986)) (emphasis in the original).

In this case, Petitioner certainly was aware of all three of his defaulted claims when he petitioned for further review in the Minnesota Supreme Court,[4] and yet none of those three claims was presented to the Supreme Court. Furthermore, even if Petitioner could not convince his appellate counsel to add those three claims to his petition for further review, the Court is satisfied that Petitioner could have raised those claims himself -- just

---

[4] Indeed, he had already raised two of the three defaulted claims, (the biased juror claim, and the ineffective assistance claim), in his own Pro Se Brief to the Court of Appeals.

as he had done with the various claims raised in his Pro Se Brief to the Court of Appeals. Thus, the Court finds no external cause for Petitioner's procedural default.[5] Because Petitioner has failed to satisfy the cause component of the cause and prejudice requirement, it is unnecessary to consider whether he could satisfy the prejudice component. Ashker v. Class, 152 F.3d 863, 871 (8th Cir. 1998) (when petitioner "has not shown adequate cause to overcome the procedural bar... we need not consider the issue of actual prejudice"); Sweet v. Delo, 125 F.3d 1144, 1151 (8th Cir. 1997), cert. denied, 523 U.S. 1010 (1998) (same); Tokar v. Bowersox, 198 F.3d 1039, 1052 (8th Cir. 1999), cert. denied, 121 S.Ct. 204 (2000) (same).

Finally, Petitioner does not qualify for the "actual innocence" exception, because he has offered no new evidence to affirmatively demonstrate that he did not commit the crime for which he was convicted. (See discussion at pp. 7-8, supra.) All of Petitioner's current claims for relief pertain to errors that allegedly occurred before or during his trial, which purportedly affected the fairness of his trial. He has not cited any new, previously undiscoverable, evidence, which would prove that he must, in fact, be innocent of the crime for which he was convicted. Therefore, he cannot overcome his procedural default by way of the actual innocence exception.

---

[5] Petitioner could not claim ineffective assistance of appellate counsel as cause for his procedural default, because he has never presented such a claim in the state courts. Edwards v. Carpenter, 120 S.Ct. 1587, 1591 (2000) ("'a claim of ineffective assistance'... must 'be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default'"), quoting Murray v. Carrier, 477 U.S. at 489.

B. Ground Two Does Not Present A Federal Constitutional Claim

The one claim that Petitioner did fairly present to the highest Minnesota state court -- i.e., that the jury was not given a proper self-defense instruction -- cannot be entertained here, because it is not a federal constitutional claim.

Federal habeas corpus relief is available to state prisoners only for violations of their federal constitutional rights. 28 U.S.C. § 2254(a) (a federal district court may entertain a habeas corpus petition filed by a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States"); Wainwright v. Goode, 464 U.S. 78, 83 (1983) (per curiam) ("[i]t is axiomatic that federal courts may intervene in the state judicial process only to correct wrongs of a constitutional dimension"). The U.S. Supreme Court has repeatedly held that

> "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, law or treaties of the United States."

Estelle v. McGuire, 502 U.S. 62, 67 (1991).

"The formulation of jury instructions primarily concerns the application and interpretation of state law." Louisell v. Director of Iowa Department of Corrections, 178 F.3d 1019, 1022 (8th Cir. 1999). "Federal habeas courts... do not grant relief, as might a state appellate court, simply because the instruction[s] may have been deficient" under state case law. Estelle, 502 U.S. at 72. Before a federal court "may overturn a state conviction, the validity of which is questioned on account of a deficient instruction, 'it must be established not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some right which was guaranteed to the

defendant by the Fourteenth Amendment.'" Beets v. Iowa Dept. of Corrections, 164 F.3d 1131, 1134 (8th Cir.), cert. denied, 528 U.S. 825 (1999), quoting Cupp v. Naughton, 414 U.S. 141, 146 (1973). Habeas petitioners "must carry a 'heavy burden' to establish that allegedly erroneous jury instructions rise 'to the level of constitutional significance.'" Conner v. Director of Division of Adult Corrections, 870 F.2d 1384, 1388 (8th Cir.), cert. denied, 493 U.S. 953 (1989), quoting Williams v. Lockhart, 736 F.2d 1264, 1267 (8th Cir. 1984). A petitioner "must show that the alleged error so infected the entire trial that he was deprived of his right to due process." Williams, 736 F.2d at 1267. See also, Louisell, supra; Clemmons v. Delo, 177 F.3d 680, 685 (8th Cir.), cert. denied, 528 U.S. 1011 (1999).

In this case, Petitioner has not even attempted to meet his burden of showing an instructional error of constitutional significance. His second ground for relief, restated in its entirety, states only the following:

> "Inaccurate and biased jury instructions. The [trial] Court committed reversible error by giving the jury inaccurate and misleading self-defense instructions."

(Petition, p. (5), ¶ 11.B.) This claim includes no reference to the federal Constitution or any federal constitutional principle. Instead, Plaintiff appears to be alleging only that the jury instructions on self-defense that were used in his case were not consistent with Minnesota law as prescribed by the Minnesota Supreme Court. Petitioner has failed to even allege (let alone establish) that the jury instructions in his case violated his constitutional right to due process, or any other constitutional right. Because no federal constitutional dimension can be found in Petitioner's second ground for relief, that claim cannot be entertained in federal court.

Furthermore, even if Petitioner meant to claim that his jury instructions violated the Due Process clause or some other provision of the Constitution, (despite the fact that no such claim actually appears in his petition), no such constitutional claim could be entertained here, because it was not previously raised in the state courts. As the Supreme Court pointed out in Duncan, "[i]f state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution." 513 U.S. at 365-66. In Petitioner's state court appeal, he cited no constitutional principles in support of his jury instruction claim. Instead, his claim on direct appeal was based solely on Minnesota state court case law. His state court appellate briefs make no mention of the federal Constitution; in fact, they do not even cite any federal case law. Thus, if Petitioner intended to raise a federal constitutional claim in his direct appeal, he did not fairly present such a claim, because he did not present it in a manner that allowed the state courts to recognize its constitutional dimension.

It also should be noted that the Minnesota Court of Appeals' discussion of Petitioner's jury instruction claim includes no express or implied reference to any federal constitutional principle; it mentions only state court cases pertaining to proper jury instructions. It is readily apparent that the Court of Appeals found no constitutional claim in Petitioner's direct appeal, which substantiates this Court's determination that no such claim was fairly presented there.

In sum, Petitioner failed to raise a constitutional challenge to the jury instructions in the state court, and it is now too late to go back to the state courts to do that. (See

Knaffla and Roby, supra.) Because Petitioner did not challenge the jury instructions on constitutional grounds in the state courts, any attempt to do so here would have to be treated as a procedurally defaulted claim. Therefore, this Court could not entertain a constitutional jury instruction challenge, (if such a challenge could be found in the current petition), unless Petitioner could show either sufficient cause and prejudice to overcome his procedural default, or proof of his actual innocence. Coleman, supra; McCall, supra. As previously noted, Petitioner has made no attempt to satisfy either the cause and prejudice requirement or the actual innocence requirement, and the Court has found no reason to believe that he could do so. Thus, even if Petitioner were attempting to challenge the constitutionality of the jury instructions here, his claim would be dismissed on the grounds of procedural default.

## III. CONCLUSION

For the reasons discussed above, the Court finds that none of Petitioner's current habeas corpus claims can properly be entertained on the merits. Grounds one, three and four of the petition have been procedurally defaulted because Petitioner never presented those claims to Minnesota's highest state court, (as required by O'Sullivan), and it is now too late for him to do so. His second ground for relief, (the jury instruction claim), cannot be entertained here, because it is based on state law – not the federal Constitution. Moreover, even if Petitioner intended to present his jury instruction claim as a constitutional claim, it could not be entertained here, because it clearly was not presented as a constitutional claim to the Minnesota appellate courts. It is therefore recommended

that the instant petition be dismissed with prejudice.[6]

## IV. RECOMMENDATION

Based on the foregoing, and all the files, records and proceedings herein,

**IT IS HEREBY RECOMMENDED** that:

1. Petitioner's request for appointment of counsel, (Docket No. 7), be DENIED; and

2. Petitioner's application for habeas corpus relief under 28 U.S.C. § 2254, (Docket No. 1), be DISMISSED WITH PREJUDICE.

DATED: June 5, 2001

Franklin L. Noel

FRANKLIN L. NOEL
Chief Magistrate Judge

Pursuant to Local Rule 72.1(c)(2), any party may object to this report and recommendation by filing with the Clerk of Court and serving all parties, within ten days after being served with a copy thereof, written objections which specifically identify the portions of the proposed findings, recommendations or report to which objection is being

---

[6] Petitioner's "Motion For Appointment Of Counsel," (Docket No. 3), was denied by this Court's order of September 21, 2000. (Docket No. 5.) On October 2, 2000, the Court received a letter from Petitioner, (Docket No. 7), indicating that he wanted to "renew" his request for appointment of counsel. Assuming Petitioner's letter can be treated as another formal motion for appointment of counsel, it is recommended that his latest request for counsel also be denied, because he has not presented any viable claims in his petition. See Edgington v. Missouri Dept. of Corrections, 52 F.3d 777, 780 (1995) (appointment of counsel should be considered if the claimant has stated a facially cognizable claim for relief). An attorney certainly could have helped Petitioner present his arguments more clearly and cogently. However, Petitioner is not being denied a writ of habeas corpus because his claims were poorly presented; he is being denied a writ because his claims simply are not actionable here. There is no reason to believe that the appointment of an attorney would ultimately benefit either Petitioner or the Court. See McCall, 114 F.3d at 756 (when considering a prisoner request for appointment of counsel, a court should consider whether both the petitioner and the court would benefit from representation by counsel for both parties). Therefore, it would not be appropriate to appoint counsel in this matter.

made, and a brief in support thereof. A party may respond to the objecting party's brief with ten days after service thereof. All briefs filed under this rule shall be limited to ten pages. A judge shall make a de novo determination of those portions to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.